IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HARATIO SHIPPING CO., LTD., *et al.*, | § § § | |
| Plaintiff, | § § | |
| v. | § | CIVIL ACTION NO. H-12-2876 |
| | § | |
| OCEANEERING INTERNATIONAL, INC., *et al.*, | § § § | |
| Defendants. | § | |

# **MEMORANDUM AND ORDER**

This cargo damage case is before the Court on venue issues raised by Defendant Oceaneering International, Inc. ("Oceaneering") in its Motion to Dismiss [Doc. # 4] ("Oceaneering's Motion"). Plaintiff Haratio Shipping Co., Ltd. ("Haratio") filed a Response [Doc. # 7], and Oceaneering filed a Reply [Doc. # 9]. On March 18, 2013, Oceaneering and Haratio each filed supplemental briefing. *See* Plaintiff's Supplemental Brief in Opposition to Oceaneering's Motion to Dismiss [Doc. # 16]; Oceaneering's Brief Concerning the Court's Authority to Decide Between Foreign Court and Arbitral Forums [Doc. # 17]. The Court has carefully reviewed the record, the parties' arguments, and the applicable law. The Court concludes that venue in Houston, Texas, is improper, that London is the proper forum for this case, and Oceaneering's Motion to Dismiss should be **granted.**

## I. BACKGROUND

This case concerns legal issues regarding the interplay of several documents for the carriage of goods by sea among Oceaneering, Onego Shipping & Chartering BV ("Onego"), Haratio, and their respective agents.[1] Oceaneering sought to ship electrical cable and stainless steel tubing from Hamburg, Germany, to Panama City, Florida.[2] On February 2, 2007, Oceaneering entered into a Booking Note (the "Feb. 2007 Booking Note") with Onego, a vessel charterer.[3] Onego entered into a time charter with Haratio.[4] Haratio owned, and Plaintiff Internship Navigation Co., Ltd. operated, the M/V ONEGO MISTRAL, the vessel used to ship Oceaneering's cargo.[5] Onego issued bills of lading on behalf of the Master relating to the carriage.[6] Oceaneering filed this suit after the cargo allegedly sustained damage during the voyage from

---

[1] There is no dispute that the Court has maritime subject matter jurisdiction in this case based on U.S. Const. art. III, § 2, cl. 1, and 28 U.S.C. § 1333(1). *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23 (2004) ("[Federal courts'] authority to make decisional law for the interpretation of maritime contracts stems from the Constitution's grant of admiralty jurisdiction to federal courts." (citations omitted)).

[2] *See* Complaint [Doc. # 1], at 2-3.

[3] *Id.*

[4] *See* March 14, 2013 Hearing. There is no transcription of the hearing at this time. The Court relies on the audio recording.

[5] *See* Complaint, at 2.

[6] *See id.* at 2; March 14, 2013 Hearing.

Germany to Florida.[7]

The parties dispute whether venue is proper in the Southern District of Texas in light of the different forum selection clauses in the parties' documents. Three documents are involved in the parties' dispute: (1) the Feb. 2007 Booking Note;[8] (2) an email sent January 28, 2009 (the "Jan. 2009 Email");[9] and (3) Bills of Lading ONEGMISHAM060901 and ONEGMISHAM060902 dated June 25, 2009 ("2009 Bills of Lading").[10] The Feb. 2007 Booking Note has three parts: (1) the front side of the Booking Note (page 1); (2) the reverse side of the Feb. 2007 Booking Note (page 2), which is labeled "Full Terms of the Carrier's Bill of Lading Form" and contains Clauses 1 through 19 (the "2007 Bill of Lading Form");[11] and (3) a typewritten addendum containing clauses 20 through 33 (the "Addendum").[12]

The page 1 of the Feb. 2007 Booking Note states that "[i]t is hereby agreed that this Contract shall be performed subject to the terms contained on Page [sic] 1 and 2 hereof which shall prevail over any *previous* arrangements and which shall in turn be superseded (except as to deadfreight and demurrage) by the terms of the Bill of

---

[7]   Complaint, at 3.

[8]   Exh. B-1 to Doc. # 4, at 1.

[9]   Exh. 4 to Doc. # 9.

[10]  Exh. B-2 to Doc. # 4.

[11]  Exh. B-1 to Doc. # 4, at 2.

[12]  Exh. B-1 to Doc. # 4, at 3.

Lading, the terms of which (in full or in exact) are found on the reverse side hereof."[13] The 2007 Bill of Lading, located on the reverse side of the Feb. 2007 Booking Note, contains a "Clause 3," labeled "Jurisdiction." Clause 3 states that "[a]ny dispute arising under this Bill of Lading shall be decided in the country where the carrier has his principal place of business and the law of such country shall apply except as provided elsewhere herein."[14] The effect of this clause, unless there is another venue "provided elsewhere" in the 2007 Booking Note, is that disputes regarding the shipment were to be resolved in Cyprus, because that is Onego's—the Carrier's—principal place of business.

The 2007 Booking Note contains, however, another segment, namely, the Addendum. The parties agree that the Addendum supersedes any conflicting terms in the 2007 Bill of Lading on the reverse side of the Feb. 2007 Booking Note.[15] In fact, page 1 of the Feb. 2007 Booking Note states that "[a]dditional clauses 20-33, as attached, are fully incorporated in this booking note."[16]

Clause 30 of the Addendum provides:

Carrier will issue "Conlinebill" Bill(s) of Lading and all terms of this Conline Booking note including all special terms/clauses agreed in these

---

[13]    2007 Bill of Lading Form, at 2 (emphasis added).

[14]    *Id.*

[15]    *See* March 14, 2013 Hearing.

[16]    Feb. 2007 Booking Note, at 1.

>Rider clauses (addendum) *shall prevail over any other terms/clauses* as set out in all Conlinebill(s). The Master will deliver the cargo only upon presentation of these documents . . . .[17]

The effect of this clause is to require application of the Addendum's provisions to all shipments under the auspices of the parties' Feb. 2007 Booking Note.

The Addendum also contains Clause 31 which provides: "This Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London . . . ." The signatories to the Feb. 2007 Booking Note thus agreed that disputes arising out of or in connection with shipments under the Feb. 2007 Booking Note (and the 2007 Bill of Lading) as amended by the Addendum would be resolved by London arbitration.

The Feb. 2007 Booking Note provided for a minimum of seven shipments to be made during the 12 months following the signing date of the Feb. 2007 Booking Note. The parties shipped cargo under the terms of the Feb. 2007 Booking Note (as amended) during and after expiration of the one-year period in February 2008.[18]

On January 28, 2009, American Shipping and Chartering sent an email on Onego's behalf to Rhodes (the Jan. 2009 Email) containing terms and conditions that

---

[17] Addendum, at 4 (emphasis added).

[18] *See* Declaration of Stephen H. Rhodes ("Rhodes Decl."), Exh. B to Doc. # 5, at 2. Rhodes is the Worldwide Logistics Manager for Oceaneering. *Id.* at 1.

altered the Feb. 2007 Booking Note for the shipment at issue.[19] That email identifies the specific cargo to be shipped, sets forth new pricing terms, and states that the terms are "[o]therwise as per COA." The parties agree that "COA" stands for "contracts of affreightment."[20] The Jan. 2009 Email itself does not contain a forum selection clause.

On June 25, 2009, GLA German Liner Agencies GmbH ("GLA"), acting on behalf of Onego and the Master, signed the two 2009 Bills of Lading covering the shipment in issue.[21] The first page of each 2009 Bill of Lading states that "[o]ne original Bill of Lading must be surrendered duly endorsed in exchange for the cargo or delivery order, whereupon all other Bills of Lading to be void."[22] The 2009 Bills of Lading each also provide that, "FREIGHT PAYABLE AS PER B/N DD 28.01.2009."[23]

The two 2009 Bills of Lading contain identical boilerplate language. On its

---

[19] *See* Stephen H. Rhodes ("Supplemental Rhodes Decl."), Exh. D to Doc. # 9 ("Rhodes Supplemental Decl."), at 2-3; Jan. 2009 Email, at 1.

[20] The Fifth Circuit has "defined 'contracts of affreightment' as 'agreements under which the commodities [a]re to be hauled.'" *Bayou Steel Corp. v. Nat. Union Fire Ins. Co. of Pittsburgh, Penn.*, 642 F.3d 506, 508 n.2 (5th Cir. 2011) (citations omitted).

[21] 2009 Bills of Lading, at 1,2. Onego is listed on the 2009 Bills of Lading as the carrier. Its agent, GLA, prepared the 2009 Bills of Lading. *See* Rhodes Decl., at 4.

[22] 2009 Bills of Lading, at 1,2.

[23] *Id.*

second page, each contains a "Clause 4" labeled "Law and Jurisdiction," which clause is almost identical to Clause 3 in the Feb. 2007 Booking Note.  Clause 4 states that "[d]isputes arising out of or in connection with this Bill of Lading shall be exclusively determined by the courts and in accordance with the law of the place where the Carrier has his principal place of business, as stated on Page 1, excepted as provided elsewhere herein."[24]  Onego is listed as the Carrier on the front of the 2009 Bills of Lading.  The parties agree that Onego's principal place of business is Cyprus. In fact, the 2009 Bills of Lading are incomplete in that Onego's principal place of business is not disclosed on "Page 1", but the parties agree in this case that Clause 4—read in isolation—refers to Cyprus as the assigned judicial forum.

## II.   LEGAL STANDARD

The Fifth Circuit "has treated a motion to dismiss based on a forum selection clause as properly brought under Rule 12(b)(3) (improper venue)." *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 901 (5th Cir. 2005) (citing *Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907, 909 & n. 3 (5th Cir.1993)).  "On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. May 11, 2010) (unpublished) (citations omitted).  "Moreover, under . . . Rule 12(b)(3), the

---

[24]   *See* Exh. B-3 to Doc. # 4, at 2.

court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (internal quotation marks and citations omitted).

"In maritime contract disputes, federal courts apply general principles of contract law." *In re Tasch, Inc.*, 46 F. App'x 731, 731 (5th Cir. 2002) (unpublished) (citing 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 5-1 (2d ed.1994) (citing *Har-Win, Inc. v. Consol. Grain & Barge Co.*, 794 F.2d 985 (5th Cir. 1986))). "The Supreme Court has consistently held forum-selection and choice-of-law clauses presumptively valid." *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997) (per curiam) (citations omitted); *see also Ambraco, Inc.*, 570 F.3d at 239 ("[A] choice-of-forum clause is presumptively valid." (citations omitted)). A party seeking to overcome this presumption bears a "heavy burden of proof" to make "a clear showing that the clause is unreasonable under the circumstances." *Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997) (internal quotation marks and citations omitted).

### III.   ANALYSIS

The key issue before this Court is which of two forum selection clauses governs the parties' dispute:  Clause 31 in the Addendum to the Feb. 2007 Booking Note, which operates to send the matter to London for arbitration, or Clause 4 in the 2009 Bills of Lading, which provides for litigation in the courts of Cyprus.  Oceaneering,

a sophisticated commercial party, drafted and agreed to the typewritten terms in the Addendum that were incorporated into the Feb. 2007 Booking Note. Addendum Clause 30 ("all special terms/clauses agreed in these Rider clauses (addendum) shall prevail over any other terms/clauses as set out in all Conlinebill(s)"[25]) expressed the parties' intentions that "all" current and future "Conlinebill" bills of lading would be governed by the terms of the Feb. 2007 Booking Note *as amended* by the Addendum.

Clause 31 ("[t]his Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London . . . .") further modified the Feb. 2007 Booking Note. Clause 31 is not inconsistent with Clause 3 in the 2007 Bill of Lading Form in the Feb. 2007 Booking. Typed terms specifically drafted for a contract, such as Clause 31, prevail over printed, boilerplate terms, like Clause 3. *See Delhomme Indus., Inc. v. Hous. Beechcraft, Inc.*, 669 F.2d 1049, 1059 n.25 (5th Cir. 1982) (citations omitted). Further, Clause 3 anticipates a possible change of venue. Clause 3 provides that "*except as provided elsewhere herein*," the carriers's principal place of business is the proper forum for any disputes under the 2007 Bill of Lading.[26] The Addendum's forum selection clause, Clause 31, is within the "elsewhere herein"

---

[25] The 2009 Bills of Lading were Conlinebill forms.

[26] 2007 Bill of Lading Form, at 2; 2009 Bills of Lading, at 1, 2.

exception. Accordingly, there is little doubt that Clause 3 is modified by the Addendum's forum selection clause.

The real issue dividing the parties is whether Clause 4 of the 2009 Bills of Lading governs as printed or is modified by the 2007 Addendum's Clauses 30 and 31. Oceaneering argues that there is no confusion involving which forum selection clause governs the parties' dispute, asserting that (1) Haratio is bound to the 2009 Bills of Lading, (2) the 2009 Bills of Lading do not incorporate the Feb. 2007 Booking Note or Clause 31, and (3) because Clause 4 of the 2009 Bills of Lading is enforceable, it governs the dispute and requires the dispute be resolved by the courts of Cyprus.

Haratio counters that none of the forum selection clauses is enforceable because (1) it is unclear whether the 2009 Bills of Lading incorporate the Jan. 2009 Email or the Feb. 2007 Booking Note and (2) Clause 4 of the 2009 Bills of Lading and Clause 31 of the Addendum are inconsistent and thus neither is enforceable. Haratio asserts that, because COGSA applies and Oceaneering is organized under Texas law, the Southern District of Texas is the proper venue.[27] Haratio argues alternatively that, if any of the forum selection clauses are valid and enforceable, then Clause 31 governs this dispute because clauses that have been added to a contract by the parties preempt form provisions.

---

[27] Haratio does not argue that the forum selection clauses are void due to unreasonableness.

The Fifth Circuit has held that a prior agreement that was "actively negotiated by the parties is far more probative of the intentions of the parties than is a bill of lading which is normally considered a receipt, and which was issued as a matter of course by a third party agent who was removed in time and space from the negotiations regarding the charter." *Cargill Ferrous Intern. v. SEA PHOENIX MV*, 325 F.3d 695, 704 (5th Cir. 2003).[28] "[A]ny contradiction between [earlier agreements] and the bills of lading must be resolved in favor of the former, unless it is clear that the parties did, as a matter of fact, intend the bills of lading to constitute a new contract, entirely superseding the earlier oral and written agreements." *West India Indus., Inc. v. Tradex*, 664 F.2d 946, 950 n.5 (5th Cir. 1982) (citations omitted). "To hold that language in the bill of lading prevails over inconsistent language in the freight contract would permit [the carrier] to change unilaterally the terms of an already existing contract." *Hellenic Lines, Ltd. v. Embassy of Pak.*, 467 F.2d 1150, 1154 (2d Cir. 1972); *see also Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 821-22 (2d Cir. 2006) ("A carrier which enters into a contract of charter cannot unilaterally alter the terms of its contract by the simple expedient of issuing its bills of lading containing inconsistent terms upon its receipt of the cargo.").

---

[28] Here, much of the "Conlinebill" bill of lading forms used for the 2009 Bills of Lading were not filled in by Onego's agent. They fail, for instance, to list Onego's place of business in the box for "Carrier's name/principal place of business," and thus support the proposition that the parties thought of these documents were mere receipts.

The Court holds that Oceaneering, having operated during 2007 and 2008 under the Feb. 2007 Booking Note's terms as modified by the contemporaneous Addendum, agreed to incorporate those terms into the transaction anticipated in the Jan. 2009 Email. That transaction was executed in June 2009, when the cargo was loaded. In the 2009 Bills of Lading issued at that time, Oceaneering referred to—and thus agreed to incorporate—the pricing terms of the Jan. 2009 Email. By this incorporation, the parties demonstrated an intention to perform the June 2009 transaction as part of their continuing course of dealing under the Feb. 2007 Booking Note as amended by the Addendum. The boilerplate forum selection provision (Clause 4) on the reverse side of the 2009 Bills of Lading thus was modified by and does not supersede the Addendum's Clauses 30 and 31.

The Court's conclusion is reinforced by other longstanding Fifth Circuit principles. As noted, the 2009 Bills of Lading expressly reference the Jan. 2009 Email and thus incorporate the freight payment terms therein. The parties direct the Court to cases involving charter parties[29] and bills of lading to guide the Court in its interpretation of the Feb. 2007 Booking Note and the 2009 Bills of Lading. The Fifth Circuit has consistently held that, "if a bill of lading specifically refers to the charter

---

[29] "'A charter party is "a specialized form of contract for the hire of an entire ship, specified by name." . . . [A] time charter provides for the charterer to obtain the vessel for a fixed period of time . . . .'" *The Rice Co. (Suisse), S.A. v. Precious Flowers Ltd.*, 523 F.3d 528, 531 n.3 (5th Cir. 2008) (quoting *Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 892, n. 1 (5th Cir.2005)).

party, then the charter party is deemed incorporated (to the extent referenced in the bill of lading)." *Keytrade USA, Inc. v. AIN TEMOUCHENT M/V*, 404 F.3d 891, 895 n.2 (5th Cir. 2005) (citing *Cargill Inc. v. Golden Chariot MV*, 31 F.3d 316, 318 (5th Cir. 1994)). Courts have held that a charter party can be sufficiently identified for incorporation if the charter party is identified by the date it was signed and only one charter party was signed on that date.[30] *See Barna Conshipping, S.L. v. 8,000 Metric Tons*, Nos. H-09-163 and H-09-272, 2010 WL 1443542, at *3-4 (S.D. Tex. Mar. 30, 2012) (Werlein, J.) (citing *Cont'l Ins. Co. v. Polish S.S. Co.*, 346 F.3d 281, 283-84 (2d Cir. 2003)). The 2009 Bills of Lading refer for pricing terms to "FREIGHT PAYABLE AS PER B/N DD 28.01.2009 SHIPPED ON BOARD." The parties agree that "B/N" refers to "booking note." The only booking note between Oceaneering and Onego is the one entered into in February 2007.[31] Although the Jan. 2009 Email is not a booking note *per se*, that email is the only document in the record dated January 28, 2009. The parties do not dispute that "28.01.2009" refers to the January 2009 Email.

---

[30] Haratio argues, citing *Volgotanker Joint Stock Company v. Vinmar International Limited*, No. 01-CV-5064(GBD), 2003 WL 23018798 (S.D.N.Y. Dec. 22, 2003) (Daniels, J.), that neither forum selection clause governs this dispute. *Volgotanker* involved bills of lading that attempted to incorporated a charter party by stating "'freight payable as per charter-party dated January 12, 1998.'" *Id.* at *7. However, two charter parties were dated January 12, 1998. *Id.* Therefore, the Court was unable to determine which charter party governed the dispute. In the instant case, there is only one document dated January 28, 2009. Accordingly, by identifying the Jan. 2009 Email by its date, the 2009 Bills of Lading incorporate the Jan. 2009 Email without the ambiguity found in *Volgotanker*.

[31] *See* Rhodes Supplemental Decl., at 3-4; Feb. 2007 Booking Note, at 1.

"Federal courts sitting in admiralty adhere to the axiom that a contract should be interpreted so as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349, 354 (5th Cir. 2004) (quoting *Mannesman Demag Corp. v. M/V CONCERT EXPRESS*, 225 F.3d 587, 594 (5th Cir. 2000)) (internal quotation marks omitted). Accordingly, the Court interprets "B/N DD 28.01.2009" to refer to the Jan. 2009 Email so that that reference in the 2009 Bills of Lading has meaning.[32]

The Court turns to what the Jan. 2009 Email incorporates. The Court finds that the entire Feb. 2007 Booking Note with its Addendum became part of the Jan. 2009 Email between Onego's agent and Oceaneering. At oral argument, counsel agreed that the reference to "COA" in the Jan. 2009 Email referred to the Feb. 2007 Booking Note, sometimes known in the industry as a "contract of affreightment" or COA. Further, "[u]nder both general contract principles and admiralty law, a separate document will become part of the contract where the contract makes 'clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt.'" *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258,

---

[32] Oceaneering, as a signatory to the Feb. 2007 Booking Note and Addendum, thus agreed that all "Conlinebill" bills of lading issued thereafter would incorporate the terms of that Booking Note/Addendum. There is no argument that Oceaneering did not receive notice of the terms of the Feb. 2007 Booking Note and the Addendum's terms. *See State Trading Corp. of India, Ltd. v. Grunstad Shipping Corp. (Belgium) N.V.*, 582 F. Supp. 1523, 1525 (D.C.N.Y. 1984).

268 (5th Cir. 2011) (citations omitted). The Jan. 2009 Email states "'[o]therwise as per COA" in its list of terms. Rhodes explained that "[t]he reference, 'Otherwise as per COA,' indicates that, with the exception of these additional terms and conditions, all other terms of the [Feb. 2007] Booking Note, including its reverse side and the Addendum, as the contract of affreightment ('COA'), governed the Shipment."[33] The Feb. 2007 Booking Note with its Addendum is the only document in the record that preceded the Jan. 2009 Email and is the only document that could be the "COA" in this context. Therefore, pursuant to the Jan. 2009 Email, the parties incorporated the Addendum's forum selection clause into the June 2009 transaction.

Oceaneering contends that the 2009 Bills of Lading do not contain a broadly worded incorporation clause that incorporates into the 2009 Bills of Lading the entire Feb. 2007 Booking Note and Addendum.[34] This is true. However, Oceaneering's argument ignores Clause 30 in the Addendum to the Feb. 2007 Booking Note. The text and context of Clause 30 make clear that Clause 30 was intended to bind the parties as to all future "Conlinebill" bills of lading, the very type of bill of lading used in the transaction in issue. Clause 30 directs that the Feb. 2007 Booking Note with the Addendum "shall prevail over any other terms/clauses as set out in all

---

[33] Rhodes Supplemental Decl., Exh. D to Doc. # 9, at 3.

[34] *See* Reply, at 1-3; *see also Cargill Inc.*, 31 F.3d at 318-19; *Barna Conshipping, S.L.*, 2010 WL 1443542, at *4.

Conlinebill(s)."[35] The parties thus addressed generally how, in future shipments, to approach any conflict between the "Conlinebill" bill of lading form's boilerplate venue provision and the venue provision in the Feb. 2007 Booking Note as amended by the Addendum. Specifically; the parties agreed that the Feb. 2007 Booking Note with the Addendum would supersede the terms in the "Conlinebill" bill of lading form. *See Keytrade USA, Inc.*, 404 F.3d at 895 n.2.

Although parties who "enter into a contract may by mutual agreement rescind or alter it," *West India Indus.*, 684 F.2d at 949, there is no evidence that Oceaneering, Onego, or Haratio intended to rescind Clause 30 by the 2009 Bills of Lading. The 2009 Bills of Lading merely state that they supersede "all other Bills of Lading." The 2009 Bills of Lading do not state that they supersede other prior agreements, courses of dealing, or understandings among the parties. *Compare* Exh. B-3 to Doc. # 4, at 2, *with Tokio Marine 7 Nichido Fire Ins. Co., Ltd. v. M/V Sohie Rickmers*, No. H-09-886, 2011 WL 2970821, at *5-6 (S.D. Tex. July 21, 2011) (Werlein, J.). As noted, conditions that are typed "prevail over any conflicting clauses on the printed form contract." *Delhomme Indus., Inc. v. Hous. Beechcraft, Inc.*, 669 F.2d 1049, 1059 n.25 (5th Cir. 1982) (citations omitted). The negotiated, typewritten Clauses 30 and 31 in the Addendum prevail over the boilerplate provision in Clause 4.

In sum, the entire Feb. 2007 Booking Note as amended by the Addendum, the

---

[35] Clause 30, Addendum, at 4.

Jan. 2009 Email, and the 2009 Bills of Lading must be read together as part of a single, continuing relationship between Onego and Oceaneering. *See One Beacon Ins. Co.*, 648 F.3d at 267 ("[W]here a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together." (citations omitted)); *Delhomme Indus., Inc.*, 669 F.2d at 1056 ("Two corporations, each represented by experienced businessmen, signed two separate agreements. There is no evidence that they intended either to be read in isolation. There is no evidence that the first was to stand alone. And as the trial court found, there is no evidence that the second was to supersede the first, which contained carefully negotiated terms typed and written on a printed form."). Through Onego, Haratio is bound to the 2007 venue terms as well.[36] The Court rejects Oceaneering's position that the parties, after years of dealings under the Feb. 2007 Booking Note and Addendum, intended to the 2009 Bills of Lading to stand alone without reference to the parties' prior arrangements.

## IV.  CONCLUSION

The parties are bound by Addendum Clauses 30 and 31, which modify the boilerplate venue provision in the Conlinebill forms used in the June 2009 shipment in issue. Thus, arbitration in London is the proper venue for this dispute. Venue is not proper in Houston, Texas, or Cyprus. For the foregoing reasons, it is hereby

> **ORDERED** that Oceaneering's Motion to Dismiss is **GRANTED** and that this

---

[36]  The parties do not dispute this.

case is dismissed in favor of London arbitration.

SIGNED at Houston, Texas this 29th day of **April, 2013.**

_____
Nancy F. Atlas
United States District Judge